## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **MICHELLE LEE HOLMES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No.  CIV-11-838-W |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

### REPORT AND RECOMMENDATION

Michelle Holmes ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income payments under the Social Security Act.  This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Upon review of the pleadings, the record ("Tr."), and the parties' briefs, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded in order that a consultative examination of Plaintiff's mental status can be conducted.

### Administrative Proceedings

Plaintiff initiated these proceedings by protectively filing her application seeking supplemental security income payments in August, 2007  [Tr. 82 - 87 and 97].  She alleged that rheumatoid arthritis in her tail bone resulted in pain which became disabling as of July, 2005 [Tr. 82 and 102].  Plaintiff's claim was denied and, at her request, an Administrative

Law Judge ("ALJ") conducted a May, 2009 hearing where Plaintiff, who was unrepresented, and a vocational expert testified [Tr. 23 - 38 and 64 - 69]. In his September, 2009 decision, the ALJ found that Plaintiff retained the capacity to perform available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 12 - 22]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**Standard of Review**

This court is limited in its review of the Commissioner's final decision to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the Commissioner, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any

2

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claim of Error**

Plaintiff's single argument on appeal is that "[t]he ALJ erred in failing to order a consultative mental examination for this pro se Plaintiff suffering from severe mental impairments." [Doc. No. 12, p. 5].[1]

**Analysis**

As was referenced in the foregoing discussion, Plaintiff raised no claim of mental impairment in her initial filing papers [Tr. 56 and 102]. Her claims related to physical

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

impairments only, and the application was denied upon review of the medical evidence submitted by Plaintiff along with the results of a consultative physical examination provided by the State of Oklahoma Disability Determination Division [Tr. 55, 277 - 278, 279, and 280 -284].  After Plaintiff requested reconsideration of her claim [Tr. 59 - 60] – specifically asserting a claim of depression [Tr. 137, 138, and 144] – a case analysis was written by a State agency psychological consultant in response to the State of Oklahoma Disability Determination Division's inquiry as to whether further development of the alleged mental impairment was necessary [Tr. 361].  In her analysis, Karen Kendall, Ph.D., concluded that Plaintiff appeared to have only a mild limitation due to her depression and that no consultative examination was necessary. *Id.*

    Dr. Kendall subsequently completed a Psychiatric Review Technique ("PRT") [Tr. 365 - 378 and 379 - 392] in which she determined that Plaintiff had mild limitations in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace [Tr. 375 and 389].  Dr. Kendall noted that Plaintiff was able to complete her disability interview; that no problems with mental status were noted during her consultative physical examination; that Plaintiff was taking drugs for her depression and anxiety but did not feel her symptoms were well-controlled; that she completes errands and household tasks on a regular basis; that, due to a recent move, she has no family or friends nearby and has fewer social and recreational interactions; that she usually gets along well with others; and, that Plaintiff reported a history of hospitalization for depression and anxiety eleven years ago [Tr. 377 and 391].  Dr. Kendall concluded that Plaintiff's depression and

anxiety were non-severe impairments. *Id.* She further determined that a residual functional capacity[2] assessment was not necessary [Tr. 365 and 379].

The ALJ adopted Dr. Kendall's PRT findings that Plaintiff had only mild limitations in her activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace [Tr. 15]. He noted that Dr. Kendall had assessed Plaintiff's impairments as not severe [Tr. 20]. He stated that he "basically concurs with the assessments of the State agency medical consultants[,]"[3] *id.,* but, nonetheless determined Plaintiff was severely impaired by her status post left knee arthroscopy and by depression [Tr. 14]. He concluded that Plaintiff "has impairments that cause more than a minimal impact on the ability to perform basic work activities; therefore, the claimant has a severe impairment or combination of impairments." *Id.* And, while the State agency psychological consultant assessed no restrictions resulting from Plaintiff's mental impairments, the ALJ found the Plaintiff could only remember, understand, and carry out "very short and simple instructions for routine tasks," could only sustain the concentration that was required for unskilled work, and, could only "work in relative isolation with limited contact with peer and supervisors and the general public." [Tr. 15].

In explaining how he reached these conclusions, the ALJ began by summarizing

---

[2]Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

[3]The ALJ was also considering the opinions of the State agency medical consultants who evaluated Plaintiff's physical impairments. Plaintiff makes no claim of error in connection with the ALJ's treatment of her physical impairments.

Plaintiff's allegations [Tr. 16]. With respect to a mental impairment, the ALJ stated that Plaintiff "reported she worries about God and the end of the world and could not explain her depression." *Id.* Turning to the medical evidence, the ALJ noted that Plaintiff was seen at the Clinton Indian Health Center in November, 2007 and May, 2008 for depression [Tr. 17]. The ALJ also summarized the findings made at a second consultative physical examination that was conducted while Plaintiff's request for reconsideration was pending at the State level [Tr. 18 and 354 - 359]. The examining physician noted Plaintiff's history and report of depression and anxiety [Tr. 358]; on physical examination he stated that, "I could not identify any active mental problems at the moment of the interview. [Tr. 359]. He diagnosed her, in part, with "depression/anxiety." [Tr. 19 and 359]. Finally, the ALJ stated that Plaintiff's RFC, which included mental restrictions limiting her to work where she need only remember, understand, and carry out "very short and simple instructions for routine tasks," only sustain the concentration that was required for unskilled work, and, only "work in relative isolation with limited contact with peer and supervisors and the general public." [Tr. 15],

> is supported by the fact that the claimant had good results from her left arthroscopic surgery and had nor permanent limitations or restrictions placed on her ability to perform basic work activities by any treating or examining physicians. The claimant has shown improvement with surgery and physical therapy. The claimant continues to smoke. The Administrative Law Judge finds that the claimant retains the residual functional capacity as determined above.

[Tr. 20].

Thus, the ALJ determined, contrary to the opinion of the State agency medical expert,

that Plaintiff's depression was a severe impairment and "cause[s] more than a minimal impact on the ability to perform basic work activities." [Tr. 14].[4] Accordingly, Plaintiff, who was not represented by counsel, necessarily met her burden of establishing that she suffers from a severe impairment. *See Hawkins v. Chater,* 113 F.3d 1162, 1167 (10th Cir. 1997). Because, however, the State agency medical expert found Plaintiff's mental impairments to be non-severe, the record had not been developed as to Plaintiff's capabilities in light of this impairment.

The ALJ assessed mental restrictions in Plaintiff's RFC but his decision does not reveal the support for such restrictions. In this regard, Social Security regulations provide that the agency will "use a consultative examination to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(a)(2). The regulations then detail those "[s]ituations requiring a consultative examination" and explain that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." *Id.* at § 416.919a(b)(emphasis omitted). These situations include one, as here, where "[t]here is an indication of a change in your condition that is likely to affect your ability to work . . . but the current severity of your impairment is not established." *Id.* at § 416.919a(b)(5). The ALJ obviously believed that Plaintiff's condition had changed since the State agency psychological expert reviewed

---

[4]Nonetheless, the ALJ does not explain why he found Plaintiff's diagnosed depression but not her diagnosed anxiety to be a severe impairment.

her file; he found her to be severely impaired by depression, but not anxiety, and assessed mental restrictions. He did so, however, without developing the record and obtaining a consultative mental status examination of Plaintiff in order to secure a mental health professional's opinion of Plaintiff's capabilities, capabilities which could potentially vary from those assessed by the ALJ in the absence of any such evidence.

### **RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT**

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be reversed and the matter remanded for the purpose of obtaining a consultative mental examination of the Plaintiff. The parties are advised of their right to object to this Report and Recommendation by the 18th day of April, 2012, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of March, 2012.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE